Good morning. Eric Brunstad on behalf of Travelers. If I may reserve five minutes for rebuttal. In 2009, Pacific Coast National Bank failed and the FDIC took over as receiver. In 2012, the FDIC began pursuing claims, the bank's claims, against various of the officers and directors, claiming they should be held responsible for certain of the bank's bad loans, about $7.5 million worth of bad loans. The problem is that the particular insurance policy that the FDIC is trying to get recovery from has a carve-out provision that carves out from the definition of loss bad loans, unrecoverable, unrepaid loans. Now, the district court said this provision is ambiguous and therefore construed it against Travelers because there are two alternative readings. There's the FDIC's reading. The FDIC says this unrepaid loan carve-out really only applies to contractual debt collection actions. That's what it's about. Travelers says no. What it applies to and covers is a situation in which an officer and director is being sued, our very case here, for a bad loan made to a borrower. The district court said, well, it could be read either way, therefore it's ambiguous. Under California law, if there are two reasonable interpretations, that establishes ambiguity and is the only way to establish ambiguity. My argument is that the FDIC's alternative reading is simply not possible. It's not reasonable. So we're left only with Travelers' reading. Therefore, the district court erred in concluding that the language is ambiguous. Therefore, this Court should reverse. If we look at the language, we look at the carve-out on page 86 of the record excerpts. We see the critical term is loss. Loss means the amount which the insureds become legally obligated to pay. The insureds are either the bank or the directors and officers. That's a defined term. It only includes them. So loss is the key term. And then we have the carve-out. Loss does not include any unrepaid, under subsection C, any unrepaid, unrecoverable, or outstanding loan to any affiliated person or borrower. That's the key. Affiliated person or borrower. Borrower is defined to exclude officers and directors. A borrower is never an insured. A borrower never makes a claim for loss under this policy. It's a D&O policy. This language must contemplate a lawsuit in tort against the affiliated persons, the directors and officers, for a loan to a borrower. Otherwise, that language becomes meaningless, the or-borrower phrase. It does no work. For example, suppose the bank makes a loan to Mr. Jones. Turns out the officer supervising the loan acted grossly negligently, should not have made the loan to Mr. Jones, is now being sued for having negligently made this loan. Mr. Jones, the borrower, will never be an insured, will never be making a claim under this policy. Mr. Jones is not a director or an officer. The only one who will be making a claim for loss is the affiliated person, defined to include the officer and director. This language must contemplate a lawsuit against the affiliated person, the officer and director, for the loan against the borrower. Otherwise, that language, or-borrower, an unrecoverable loan to a borrower, does no work and makes no sense. Under California law, we must construe a contract to give meaning to all of the terms. It is an unreasonable construction of this contract to construe it so that or-borrower has no meaning. Because that's an unreasonable construction, the district court erred in saying that this provision is ambiguous because it might be read only to apply to debt collection actions against borrowers. Think about it this way. Insurance coverage under directors and officers' policies is not for things like if the director and officer doesn't pay the taxes that the bank owes. That's specifically excluded under subsection B. Loss can't include a lawsuit against the officer and director for failing to pay the taxes. Same thing here. It doesn't cover the bank's bad loan portfolio. It can't include you have a bad loan. So now the receiver comes in and says, I'm going to sue the officer and director because, for example, the officer and director didn't pay the taxes, and there's a problem and there's liability and there's penalties and things. No, that's excluded. Same thing for bad loans. These core business things that the bank's officers and directors are supposed to be doing, they are excluded. Or a dividend. The officer and director negligently authorized a dividend when, for example, the bank was insolvent. Couldn't there be a difference between the loan and the amount of the loan, though? I mean, maybe someone could sue to take over a loan or be the new bank holding the loan compared to damages in the amount of a loan. Judge Finley, I think it's important to understand. The answer to your question, I think, is the carve-out applies to damages, kinds of damages, not to types of claims. The exclusions, like the insured versus insured exclusion at the back of the policy, that covers types of claims. This covers kinds of damages. And the fact that the word amount is not there is pretty obvious, it seems to me. Just like it's not there in front of taxes. It doesn't say the amount of taxes in subsection B. It doesn't say the amount of dividends in subsection D. Well, that's only for grammatical reasons. If you look at the definition of loss, loss means the amount which the insured becomes legally obligated to pay. Damages are always in an amount. The reason why there's no word amount in B, C, and D, but there is a word amount, for example, any amounts that constitute inadequate consideration, is that grammatically those subsections that say amount would not make any sense without the word amount. You need the word amount in there to make a grammatical phrase. You don't need to repeat the word amount in front of dividends or in front of unrepaid loan or in front of taxes because it's already included in the concept of a tax. It's always in an amount. But again, the definition of loss means the amount. The types of damages that are covered are always in an amount. If you look at, again, the definition of loss, you see loss means the amount which the insureds, the Ds and Os, become legally obligated to pay, including damages. The term damages is also defined. The term damages includes compensatory damages. Obviously, this has to do not just with contract liabilities but also tort claims, which always you have damages. Think of, for example, the illustration of the car loan, the car automobile policy. Suppose the automobile policy that the insured has covers both property, I'm sorry, covers personal injury damages but not property damages to the vehicle. The insured didn't buy property coverage. That would be excluded. Well, you can't come along and say, oh, I, the insured, am being sued in tort, therefore everything is included. That's not how it works. Tort liability always is with respect to damages of a certain kind, and in the hypothetical, damages for personal injury is covered but not for property damage. Same thing here. Damages are covered except for those that are specifically carved out. With this carve out, the unrepaid loan carve out carves out as an item of damages loans. Unrepaid loans are never a compensable type of loss, and it cannot be true under this language that this only applies in a lawsuit, a debt collection action against a borrower. It has to apply, it must contemplate and does contemplate and cover a situation in which the director and officer, who is an affiliated person by definition, is being sued in tort for damages for a loan to a borrower. Borrower, again, is defined specifically to exclude directors and officers as affiliated persons. So, again, the language, because this carves out certain types of damages, doesn't apply to claims, applies to damages. The language, the interpretation the FDIC posits is not reasonable, it's not plausible, so the district court erred in saying there were two ways you could look at this, therefore it's ambiguous, therefore it should be construed against the insurer. Now, we have the separate provision, the insured versus insured exclusion. That operates differently. Exclusions, exclusions apply with respect to types of claims. It's not an exclusion based on particular types of damages, like the carve out is. It's an exclusion based upon types of claims. And the type of claim involved is any claim by or on behalf of the bank in any capacity. That's what the insured versus insured exclusion says. Now, under the Supreme Court's decision in O'Melveny, when the FDIC as receiver takes over for a failed bank, it steps into the shoes of the bank. And as this court concluded in Biltmore, construing an identical insured versus insured exclusion, if you have somebody else asserting the claims of the company, the insured, they are bound by all the limitations of the policy. The FDIC says, well, we're different. We're different because when we pursue these causes of action, we're acting for the benefit of a lot of different kinds of people. This court, in the Biltmore case, emphatically rejected that distinction as legitimate. This court says, on behalf of and for the benefit of, you cannot conflate. On behalf of means you're stepping into the shoes of the insured, which is exactly what the FDIC is doing here. For the benefit of, it doesn't matter. It could be for the benefit of anybody, whether it's for the benefit of the FDIC, the shareholders, et cetera. It doesn't matter. Now, the district court also thought that this insured versus insured exclusion, which we say applies here, was also ambiguous. And the district court said, well, that's because there are some other cases that have held that it's ambiguous. Well, respectfully, there are lots of other cases which have held that it's not ambiguous. So which are we supposed to give deference to? I submit that every court has an independent obligation to review the language to determine for itself whether you think it's ambiguous or not. And I submit, following the Supreme Court's decision in O'Melveny and following this court's decision in Biltmore, the insured versus insured exclusion here is not ambiguous. One of the FDIC's claims, the one alleging gross negligence, I think was brought directly under, I don't know how you say this, FIREA or F-I-R-R-E-A. The bank couldn't have brought that claim, right? That had to be not on behalf of the bank, because it was only a claim the FDIC could bring, wasn't it? No, Judge Friedland. The FDIC is only inserting the bank's claims for negligence, gross negligence, and breach of fiduciary duty. It is not asserting any independent claim that it has under FIREA that it itself has. It is acting as a receiver. It is asserting the bank's claims against the insureds, the directors and officers. Now, there may be a little bit of confusion here, the way that FIREA is worded. FIREA basically says, it kind of sets a ceiling, or sets a floor, rather. As long as state law allows for a minimum level of kinds of causes of action, then FIREA doesn't kick in to provide its own kinds of causes of action. That is the situation here. California law recognizes the basic minimum of kinds of causes of action that can be pursued, and the FDIC as receiver is exclusively pursuing the bank's causes of action against its own officers and directors. I'd like to reserve the rest of my time, if I may. Thank you. Thank you. Good morning, and may it please the Court. Michelle Ogneveni on behalf of the FDIC as receiver for Pacific Coast National Bank. California sets a very high bar for limitations on coverage in insurance policies. For a limitation on coverage to be enforceable, the language used must be clear and unmistakable. If there is any reasonable alternative reading of the language, it should be construed in favor of coverage. Neither of the provisions the traveler cites meets this high bar. Numerous decisions hold that these provisions are ambiguous, and at the very least that should raise a red flag. Addressing the unrepaid loan loss carved out first. Traveler says that the FDIC's reading would read out of the provision the term borrower. As the district court noted, this language has been recognized as ambiguous by multiple other courts. Also, I don't think it's true that the FDIC's interpretation that this unrepaid, this carve out for unrepaid loans would read out borrower. Why is that? Can you give a hypothetical where borrower would have a meaning under your reading? Now, I've tried to speculate what travelers means by this provision, and I think that the fact that I'm required to speculate is some indication that the language  But I think that as travelers stated, this provision talks about different types of damages, judgments, settlements that would be excluded. And I can definitely envision a case in which a borrower might bring, and I think it's important to note that travelers has sort of focused on the director and officer liability coverage in this policy, but the loss provision applies to the policy as a whole, which includes multiple insuring agreements. One of those is for bankers' professional liability, professional services liability, and that includes coverage for lending acts, which are sort of misrepresentations in the lending process by employees of the bank. And so I could definitely conceive of a claim by a borrower for lending acts, for instance, in which part of the damages or part of the judgment might require the bank to reduce the balance on the loan, forgive part of the loan, rescind the loan agreement, something of that nature. And then the bank would try to assert a claim for that loss to the insurance company, and I could see that that might not be paid because that is actually requesting reimbursement for a loan. Here, I think it's important to recognize that the FDIC is not— Wait, I'm not sure I follow. So you're saying a borrower, someone who took out a loan, would sue the bank? Right, and so the bank would incur a loss of that loan because it was required to. But wouldn't the person sue—I'm confused about what the person would be suing for. They might be suing for a lending act, some sort of misrepresentation in the lending process, something like that. There could be various consumer protections, you know, laws of that nature. You know, I'm speculating here, but the policy, there are other insuring agreements that cover those sorts of acts. And so I could conceive of a situation in which a borrower might be seeking, you know, rescission of the loan agreement or something like that because of something that the bank employee did. And so the bank wouldn't be able to recover the amount of the loan in that situation because that would actually be seeking reimbursement of the loan, basically. For example, if I went to the bank and they said, look, we're going to give you a great rate, and if you take the loan with us, you'll also get access to these other programs we offer. And so I say, great, and then what they don't tell me is that these other programs are huge fees. I might say, I want to cancel everything. I want to get out of this, and I'm going to sue you for fraud. That would be the example you're giving. Right, perhaps, something like that. I think, yeah, that's something along those lines. And so I think it's just important to recognize that the D&O coverage isn't— But I'm confused about how that would fall under this provision at all. I mean, how would that person be suing for a loan or the act of a loan? Well, no, the bank would be the one submitting the claim for the loss because the bank would be required to pay out in a settlement, a judgment, damages, something like that, the amount of a loan, and it would be wanting to reimburse itself for the loan it made, and so it would be incurring the loss itself. So I think it's important to note a couple of things. The D&Os are not the only insureds under this policy. The bank is also an insured, so the bank can incur losses. Also, the D&O coverage, the Management Practices Act coverage, isn't the only coverage offered by this policy. This loss provision applies to the policy as a whole. So I think it's important to note that this carve-out could be directed at other things, and that's the point I'm trying to make. And so although it might be the case that the carve-out would— it's hard to think of a situation in which the carve-out would apply to a D&O action involving a borrower. Yes, that wouldn't happen. But it could apply to other parts of policy, other losses that the bank might incur. And I think it's important to note that just the fact that this is possible, that it's unclear what travelers meant. Travelers is obligated to phrase limitations on coverage in a way that a layperson could understand. This is a community bank whose primary business was lending. It is buying D&O coverage to protect its directors and officers. In the event of claims like the ones that the FDIC has asserted. It doesn't seem that a layperson would read this loan loss carve-out as completely eviscerating coverage for anything related to lending. And that's what the FDIC is asserting here. It's not seeking repayment of loans. It's not seeking reimbursement for loans that the bank made. It's seeking damages for misconduct of the directors and officers. Although that misconduct— How would they have said it more clearly? I think that there are a few examples in the policy itself. There are a couple provisions that talk about limitations on coverage that are based on or arising from loans. That language isn't in this carve-out. But it used it elsewhere when it was trying to have a more all-encompassing exclusion. Also, I think the Southwest decision that travelers— So, if you read that into C, it really could be read to already say the amount of loan. Well, I don't think that the damages that the FDIC is seeking are the amount of loans. We've estimated our damages by referring to loan charge-offs. But we are not seeking damages for loans. We're seeking damages for mismanagement of the bank. But in the amount of the loans, right? Well, we've calculated it by referring to the charge-offs on the loans. But nothing about the damages that we would receive is going to reduce a borrower's obligation on those loans, repay those loans. The borrowers are still on the hook to repay those loans. I mean, there's nothing about an award here that would affect that obligation. And it really does seem— And so I think the point that, you know, travelers is being forced to ensure the bank's whole loan portfolio is just a red herring, that's not what we're getting here. There haven't been foreclosures for the loans in question then? These loans, I understand, because the bank closed and typically the FDIC as receiver will try to find another bank to assume the assets and liabilities of a closed bank, so, you know, to minimize our administrative burden. And in this case, there was an acquiring institution. My understanding is the acquiring institution now has those assets. I'm not sure what it's doing with them. We have no role in that. But the acquiring institution, I mean, there's nothing to prevent them from trying to collect on these loans. They were not foreclosed. As far as I know, there were no foreclosures on these loans while the bank was alive. I'm not entirely sure for all of them, but I know that many of these loans were just transferred to the acquiring institution. And I think it's important that, you know, this— I think it does make a difference because if you're saying that you can insert into here that these are any damages, judgments, et cetera, that are in the amount of loans, that could mean, you know, that it's just sort of the number. And that's, you know, that seems overly broad. And it would be hard for a layperson to understand exactly what that means. And here I don't think that it's just a matter of grammar. I mean, they included amount in other provisions of the carve-out where it's not obvious it was required. As Traveler said, all of these things are in the amount of something. Of course they are. They're numbers. But I think it does make a difference when you're talking about a loss does not include any unrepaid loan and whether that would necessarily include damages for misconduct, things that aren't reimbursing loans, aren't repaying loans themselves, that are just calculated by referring to loans. That seems to be a different thing. And it seems that a bank, directors and officers in this position would not necessarily understand what they were agreeing to if they read this language the way it's written. Moving on to the insured versus insured exclusion, unless there are any other questions on the carve-out. First of all, nothing in the exclusion refers to the FDIC. Travelers did have exclusions that could have added to this policy that did refer to the FDIC. In fact, it tried to add one here. But the bank refused to accept that revision to the policy and instead it just purchased runoff coverage. So that was never added to this policy. Also, reading the plain language of the exclusion, that these are barring coverage for claims brought by or on behalf of the bank, the FDIC is not equivalent to the bank. It's not regarded as the same entity as the bank, as the debtor in possession in Biltmore is regarded as the same entity as the debtor. And it doesn't make sense to say that the FDIC is acting on behalf of the bank, as that phrase is commonly understood. A common meaning of the phrase on behalf of is that someone is acting in the interest of another. We're not acting in the bank's interest. The bank no longer has an interest. It no longer exists. It's not coming back. It has no stake in the outcome of this litigation. The FDIC acts only on behalf of the receivership. And so I think it's not true to say that the FDIC stands only in the shoes of the bank when it's bringing these claims. It also succeeds to the rights of shareholders and depositors. And so now the FDIC holds the exclusive right to bring claims of these types. When the bank was alive, the bank didn't have the exclusive right to bring these claims, and that's why you have exceptions like the shareholder derivative action exception to the exclusion. And so now the FDIC, it has acquired the rights of the shareholders, and so it stands partially in their shoes when bringing these claims. And that's been a common source of finding ambiguity in these exclusions by various courts. Again, Travelers is trying to add language to the exclusion that isn't there. It's equating claims brought by or on behalf of the bank with claims of the bank. But that's not what the exclusion says. And I think it's very important to recognize that this case is very different from Biltmore. The reasons why the Ninth Circuit, this court, decided that the on behalf of phrase applied in that situation was because the claims were actually initiated, were brought by the debtor and debtor in possession. So really it fit in the plain language of the phrase by or on behalf of. It was essentially by the debtor. And they hinged on on behalf of because of the debtor in possession aspect. But, you know, it's very easy to see why the phrase applied there. That's not the case here. The FDIC is not regarded as the same entity as the bank. We succeed to the rights of multiple parties. There's no statute like there would be in the Bankruptcy Code equating us with the pre-closure bank. And so it just is not a similar situation to Biltmore. Also, Biltmore was based in part, a significant part of the decision there was this concern with moral hazard that motivated the court because it thought, you know, the debtor in possession and its intimate links to the debtor, it raised this potential for collusion or, you know, the debtor might still have an interest in the outcome. That's just not the case here because the bank is defunct. It has no interest in the outcome. It had no role in bringing these claims. They weren't brought for three years after the bank failed. And so it just is not obvious from a plain reading of the exclusion that applies to the FDIC and reading this from the point of view as a layperson as we're required to do under California law. At the very least, it's unclear what travelers meant to do, and it should not be applied to bar coverage. May I ask you a question? The other circuits that have decided this, are the 10th and 11th decided? Well, the 11th is the only one that's construed this exact exclusion. The 10th Circuit case was different. It was a differently worded exclusion, but the 11th Circuit construed this exact one. It was another traveler's policy that used this language, and they came out in the FDIC's favor. And no other circuits have ruled on it? No, it hasn't gone up to the circuit court level. I mean, we've settled most of these, frankly, so there aren't all that many. I don't think there are any pending traveler's cases left at this point, but not many of them do reach the courts of appeals. In this crisis, there were some from the prior crisis that did go up, but they were mostly focused on the regulatory exclusion because it's more common to include the regulatory exclusion in those policies. You're not relying on the 10th Circuit case? No, no, we're not. And that one was a different exclusion, different wording, and so it's not very relevant for here. Thank you. Thank you. Thank you. I think it's important to emphasize that the hypothetical that opposing counsel came up with to sort of try to say that the language would still have some meaning under their interpretation does not involve an unrepaid loan at all. This case does. And if you look at record excerpts, page 27, it's very clear that the types of damages the FDIC is seeking is the amount of the unrepaid and unrecoverable loans. These are loans that are never going to be collected from the borrowers because the borrowers can't repay them. They've either gone out of business or they filed for bankruptcy or whatever. They are unrecoverable, uncollectable loans. And the FDIC concedes in its pleading on page 27 that the amount of damages is the charge-offs that were taken because these loans cannot be repaid. So, again, they can come up with no hypothetical involving an unrepaid loan that this gives this provision, this carve-out any meaning under their construction. Do the debtors still owe this money? The debtors still owe this money, but the point is that it is unrecoverable. It's unpaid, which is why the FDIC is trying to get travelers to pay it. They can't collect it from the borrowers. They have an obligation to try to liquidate all the assets, including collecting all the loans. They can't. So now they want travelers as the insurer to pay for these unrepaid and unrecoverable loans. This language could not be any clearer. It's always possible to say you could add more and more and more and more language to these insurance policies to be even more and more detailed. The problem is then you get insurance policies that are 3,000 pages long. We want to try to make the language as concise and surgical and precise as possible. It wasn't unimaginable, though, that the FDIC might someday have claims about unrepaid loans. So, I mean, it wouldn't be that much language to add something that specifically said the FDIC can't collect unrepaid loans and add a line. It is possible to have a complete regulatory exclusion, saying any action by the FDIC is not covered or any action by a governmental entity is not covered. The problem with that is that it throws the baby out with the bathwater. But it wouldn't have to be. It's overly broad. I mean, you could have a narrower one, right? The loss provision itself could have talked about the FDIC. It could, but then you'd start having to add, well, what about the Securities and Exchange Commission? What about the SLIC? What about the RTC? What about some other receiver? What about some other entity? What about some other party? The point is to exclude a type of damages. If the damages anyone is seeking, it doesn't matter whom, against the officer and director is for unrepaid loans, which these damages clearly are. In their pleading, they list all of these unpaid loans and the amount of the unpaid loan. That is their damages. That is what they're claiming. It doesn't matter that they're asserting a tort claim against the officers and directors, because this section must contemplate a tort action against the officers and directors for the unrepaid loans. Otherwise, it is meaningless. I see that my time is up. Yes, it is. Thank you. Thank you very much. Thank you both. The case to this argument will be submitted.
judges: Reinhardt, Owens, Friedland